IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| EPS PLASTICS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:05-0017 |
| | ) Judge Haynes |
| PPG INDUSTRIES, INC., | ) Magistrate Judge Knowles |
| | ) |
| Defendant. | ) |

## MEMORANDUM

Plaintiff, EPS Plastics, Inc., ("EPS") a Tennessee corporation, filed this action under 28 U.S.C. § 1332, the federal diversity jurisdiction statute, against Defendant, PPG Industries, Inc., ("PPG") a Pennsylvania corporation, for breach of contract. Plaintiff's claim arises from the Defendant's alleged failures to purchase certain products and to pay storage costs for those products that the Plaintiff designed and manufactured for the Defendant. Plaintiff seeks damages, attorney's fees, costs and prejudgment interest.

Before the Court is Defendant PPG's motion for summary judgment (Docket Entry No. 14) contending that there are not any material factual disputes and that Defendant PPG is entitled to judgment as a matter of law. In sum, PPG cites the parties' clear and unambiguous written agreement that does not require PPG's obligation to purchase EPS's excess products or to pay storage costs of such goods. According to PPG, this written agreement supercedes any alleged prior oral agreement between the parties. PPG also contends that there was not any subsequent oral agreement that PPG would buy EPS's inventory or pay for its storage costs. Finally, PPG argues that neither an industry standard nor PPG's dealings with a prior supplier are sufficient to create a contract between EPS and PPG.

In its response (Docket Entry No. 21), EPS asserts, in essence, that written memoranda establish the parties' agreement, and such agreement was that the remaining inventories held by the previous supplier would be taken by Defendant PPG and/or used until exhausted. EPS argues that this latter agreement for the sale of goods is valid under Tenn. Code Ann. § 47-2-201 and, that Plaintiff EPS is entitled to damages under Tenn. Code Ann. §§ 47-2-703 and 48-2-709(1). EPS argues that PPG accepted the unused goods by inspecting them and arranging for their shipment to another firm that replaced EPS, a fact inconsistent with EPS's ownership of the goods.

In its reply, PPG reiterates the lack of any writing that obligates PPG to purchase all of Plaintiff's excess inventory and/or to pay storage costs for that inventory. PPG contends that its efforts to arrange shipment of the goods to a new supplier was a matter of courtesy, not any legal obligation.

For the reasons set forth below, the Court concludes that there are not any material factual disputes on the parties' 2000 agreement and PPG is entitled to judgment on the termination of that contract, as a matter of law. The parties' 2000 written agreement does not require PPG to purchase any remaining cartons from EPS nor to pay any storage costs for such excess capacity. Yet, based upon a May 16, 2001 letter to EPS from a PPG agent, a factual dispute remains about PPG's obligation under its agent's letter of May 16, 2001 and any related discussions, to purchase additional products from EPS.

### A. Review of the Record[1]

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986). Upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 247-52 (1986), particularly where there has

At its plant in Huntsville, Alabama PPG manufactures glass that is used in airplanes. (Docket Entry No. 16, Defendant's Statement of Undisputed Material Facts at ¶ 1). Beginning in the early 1980s, EPS supplied PPG with packaging materials, including various polystyrene foam that are inserts for corrugated boxes that PPG utilizes in shipping glass to its airplane manufacturer customers. Id. at ¶ 2.

As to their dealings, at the start of each year, PPG sent EPS a blanket purchase order that did not identify any products, but set forth the terms and conditions applicable to the parties' relationship. Id. at ¶ 3. PPG would later send specific purchase orders that identified specific types of products. Id. at ¶ 4. Upon EPS's receipt of a telephone call or fax to purchase shipment, EPS would ship products for next day delivery to PPG and PPG would then pay for the products. Id. at ¶ 5.

PPG's January 3, 2000 Blanket Purchase Order, sent to EPS, provides in pertinent part as follows:

> THIS PURCHASE ORDER COVERS VARIOUS CORRUGATED BOXES AND POLYSTRYRENE SHEETS/INSERTS FOR THE PPG - HENTSVILLE FACILITY."
>
> * * *
>
> THIS PURCHASE ORDER, ITS TERMS AND CONDITIONS BECOMES THE CONTRACT UPON THE PERFORMANCE OF THE SUPPLIER."
>
> * * *
>
> METHOD OF RELEASE FOR SHIPMENT AGAINST THIS PURCHASE

---

been an opportunity for discovery. Celotex Corp., 477 U.S. 317 (1986). The Plaintiff does not dispute the Defendant's statement of undisputed material facts. (Docket Entry No. 16). Based upon the Plaintiff's failure to respond to Defendant's statement of undisputed facts, the Court finds the lack of any material factual dispute as to those facts. Local Rule 8(b)(7)(g).

3

ORDER WILL BE BY EDI OR FAX PO RELEASES.

FOR SUPPLIER PLANNING PURPOSES, A FORECAST OF REQUIREMENTS MAY BE SENT TO THE SUPPLIER. A FORECAST IS NOT A RELEASE, UNLESS SPECIFICALLY DESIGNATED SO BY PPG PURCHASING.

NO MINIMUM ORDER IS TO APPLY UNLESS STATED OTHERWISE ON THE FACE OF THIS PURCHASE ORDER.

\* \* \*

100% ON TIME DELIVERY IS REQUIRED. <u>SUPPLIER IS EXPECTED TO MAINTAIN AT HIS OWN VOLITION, SUFFICIENT STOCK TO ACHIEVE AND MAINTAIN SPECIFIED DELIVERY. DELIVERY LEAD TIMES QUOTED BY THE SUPPLIER ARE AS IMPORTANT AS PRICE TO PPG</u>.

\* \* \*

ANY SPECIFIC VENDOR STOCKED MATERIAL INVENTORY FOR WHICH PPG INTENDS TO BE TOTALLY RESPONSIBLE WILL BE DESIGNATED AS MAKE AND HOLD. THE SPECIFIC INVENTORY AMOUNTS, ITEMS, VALUE, TERMS FOR TAKING DELIVER, AND PAYMENT TERMS WILL BE OUTLINED IN A SEPARATE PURCHASE ORDER OR LETTER.

(Docket Entry No. 17, Rigsby Declaration, Exhibit 7 thereto at pp. 1,2,3,4 and 9) (emphasis added).

The Blanket Purchase Order also has a set of "PURCHASE ORDER GENERAL CONDITIONS." <u>Id.</u> at Exhibit 3. The Purchase Order General Conditions include a merger clause. <u>Id.</u> at ¶ 1.

The subsequent "Specific Purchase Orders" contain the same or similar language as the Blanket Purchase Order. The Specific Purchase Orders are expressly subject to the following General Terms and Conditions:

    14.    **CANCELLATION.** <u>Buyer [PPG] reserves the right to cancel this Pruchase Order, or any part thereof, at any time, without cause,</u> by written notice to seller [EPS]. <u>In such event, Buyer shall pay for all materials or services delivered, completed and accepted by Buyer</u> and reasonable prices shall be

4

> reached consistent with the price specified in the Purchase Order. Upon receipt of notice of cancellation hereunder, Seller shall unless otherwise directed, immediately discontinue all work in process and immediately cancel all orders or subcontracts given or made pursuant to this Purchase Order.

Id. at Exhibit 3 (emphasis added). Sometime in late 2000, PPG notified EPS that PPG intended to terminate their relationship. (Docket Entry No. 20, Blackmon Affidavit at ¶ 6). EPS insisted that PPG purchase all PPG related inventory that EPS had on hand and to pay storage fees for the inventory. By that time, PPG had paid EPS for all materials that EPS delivered and PPG accepted. (Docket Entry No. 16, Defendant's Statement of Material Facts at ¶ 10).

According to Preston Blackmon, EPS's Rule 30(b)(6) designee, EPS concedes the lack of any document from PPG requiring EPS to make and hold any product for PPG.

> Q. From EPS' perspective, is there a written agreement that controls the dispute between the parties?
>
> A. No.
>
> Q. Okay. Do you believe that there is an oral agreement that controls the dispute between the parties?
>
> A. Yes.

(Docket Entry No. 17, Attachment thereto, Blackmon Deposition at p. 40).

Yet, in a document dated May 16, 2001, from Mark Young of PPG to Blackmon that was a "working copy", Young listed specific types of boxes for another purchase order. (Docket Entry No 20, Blackmon Affidavit at Exhibit 3). In this letter, Young writes, "Once we have finalized this list, we <u>will issue a Purchase Order(s) to cover these boxes</u>. I would like to suggest that we take one-third of the boxes for the next three months, making it three deliveries for EPS. Please let me know

your thoughts." Id. (emphasis added).

PPG notes Blackmon's testimony that EPS's excess inventory arises from EPS's purchase of supplies in bulk to meet PPG's price.

> Q. I think I understand exactly what you're saying. Let me ask it one more time to be sure. You get a purchase order in that wants 50 of box 50. In order to fill that purchase order you might have to buy a hundred of the component parts that go to make box 50.
>
> A. Exactly.
>
> Q. So it's not that PPG sent you a purchase order for a hundred of them, but to fill the 50, or the 25, or the 10, or whatever it would be, you had to buy more than the purchase order?
>
> A. Exactly, to meet their price.

(Docket Entry No. 17, Attachment thereto, Blackmon Deposition at p. 83).

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that she had to come forward with all of her evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). Accord, Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court

6

explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment</u>. Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). But see <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

7

477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n.4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991) (quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

\* \* \*

Progressing to the specific issue in this case, we are convinced that the inquiry

Case 1:05-cv-00017 Document 35 Filed 03/14/06 Page 8 of 15 PageID #: 238

involved in a ruling on a motion for summary judgment or for a directed verdict
necessarily implicates the substantive evidentiary standard of proof that would apply
at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for
summary judgment or for a directed verdict based on the lack of proof of a material
fact, the judge must ask himself not whether he thinks the evidence unmistakably
favors one side or the other but whether a fair-minded jury could return a verdict for
the plaintiff on the evidence presented. The mere existence of a scintilla of evidence
in support of the plaintiff's position will be insufficient; there must be evidence on
which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore,
unavoidably asks whether reasonable jurors could find by a preponderance of the
evidence that the plaintiff is entitled to a verdict -- `whether there is [evidence] upon
which a jury can properly proceed to find a verdict for the party producing it, upon
whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 252 (citation omitted and emphasis added).

It is likewise true that:

[I]n ruling on a motion for summary judgment, the court must construe the evidence
in its most favorable light in favor of the party opposing the motion and against the
movant. Further, the papers supporting the movant are closely scrutinized, whereas
the opponent's are indulgently treated. It has been stated that: `The purpose of the
hearing on the motion for such a judgment is not to resolve factual issues. It is to
determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

A district court is not required to speculate on which portion of the record the
nonmoving party relies, nor is it obligated to wade through and search the entire
record for some specific facts that might support the nonmoving party's claim. Rule
56 contemplates a limited marshalling of evidence by the nonmoving party sufficient
to establishing a genuine issue of material fact for trial. This marshalling of
evidence, however, does not require the nonmoving party to 'designate' facts by

9

citing specific page numbers. Designate means simply 'to point out the location of.'
Webster's Third New InterNational Dictionary (1986).
Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

10

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

As to the governing legal principles for a breach of contract claim, as a diversity action, state law applies. In a diversity action, the District Court is obliged to apply the law of the forum. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938). In addition, the conflict law of the forum determines which state's substantive law shall apply. Klaxton Co. v. Stentor Electric Mfg., 313 U.S. 487 (1941). Under Tennessee law, the validity of a contract and the substantive rights of the parties thereunder, are governed by the law which the parties intended to govern their relations with the legal presumption that absent a contrary intent, the parties intended the law of the place of making of the contract. Goodwin Bros. Leasing, Inc. v. H.& B., Inc., 597 S.W.2d 303 (Tenn. 1980), reh'g denied,

11

(1980). Both parties rely upon Tennessee law.

Under Tennessee law, as a matter of general contract law principles, "[t]he ascertainment of the intention of the parties to a written contract is a question of law or judicial function for the court to perform when the language is plain, simple and unambiguous." Forde v. Fisk University, 661 S.W.2d 883, 887 (Teen. Ct. App. 1983) (citing Petty v. Sloan, 277 S.W.2d 355, 358 (Tenn. 1955)). But, "where the writing is not plain and unambiguous, and is such to require the aid of [parol] evidence, and the [parol] evidence is conflicting or such as admits of more than one conclusion, it is not error to submit the doubtful part under proper instructions to the jury." Id.

Yet, as this Court observed, ambiguity as to a contract's term is not created because the parties disagree as to its meaning. Oman Construction Co. v. Tennessee Valley Auth., 486 F. Supp. 375, 382 (M.D. Tenn. 1979). When clear contract language reveals the intent of the parties, there is no need to apply rules of construction. Id. One party's view of the contract does not necessarily mean that such provisions are part of the contract. In re D.L. Bouldin Constr. Co., 6 B.R. 288, 295 (Bankr. E.D. Tenn. 1980). Tennessee law generally allows enforcement of the parties' contract as written without questioning the wisdom of the contract or the harshness of its enforcement absent some public policy consideration. Metropolitan Life Ins. Co. v. Humphrey, 672 S.W.2d 782, 786 (Tenn. Ct. App. 1984); see also In re Dynamic Enter., 32 B.R. 509, 518 (Bankr. M.D. Tenn. 1983).

In the absence of fraud or mistake, an unambiguous written contract must be interpreted and enforced according to its plain terms. See FDIC v. Armstrong, 784 F.2d 741, 744 (6th Cir. 1986); Cocke County Bf. of Highway Comm'rs v. Newport Utils. Bds., 690 S.W.2d 231, 237 (Tenn. 1985). See also Tenn. Code Ann. § 47-50-112(a) (2000) ("All contracts...in writing and signed by the party to be bound...shall be prima facie evidence that the contract contains the true intention of the parties, and shall be enforced as written...."). A contract is ambiguous only when its meaning is unclear and the contract language may be understood in more ways than one. Empress Health & Beauty Spa, Inc.

12

v. Turner, 503 S.W.2d 188, 190-91 (Tenn. 1973).

In construing a contract, the entire contract should be considered. Newport, 690 S.W.2d at 237 (citing Crouch v. Shepard, 44 Tenn. 383, 4 Cold. 383 (1867)). Under Tennessee law, a contract "must be viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another." Associated Press v. WGNS, Inc., 348 S.W.2d 507, 512 (Tenn. Ct. App. 1961).

Under Tennessee law, a contract can be expressed, implied, written, or oral, but an enforceable contract must, among other elements, result from a meeting of the minds and must be sufficiently definite to be enforced. Johnson v. Central National Ins. Co. of Omaha, Neb., 356 S.W.2d 277, 281 (1962); Price v. Mercury Supply Co., Inc., 682 S.W.2d 924 (Tenn.Ct.App.1984). The contemplated mutual assent and meeting of the minds cannot be accomplished by the unilateral action of one party, nor can it be accomplished by an ambiguous course of dealing between the two parties from which differing inferences regarding continuation or modification of the original contract might reasonably be drawn. Batson v. Pleasant View Utility Dist., 592 S.W.2d 578, 582 (Tenn.Ct.App.1979). In addition, a mere expression of intent or a general willingness to do something does not amount to an "offer." Talley v. Curtis, 129 S.W.2d 1099, 1102 (Tenn.Ct.App. 1939).

Even though a manifestation of intention may be understood as an offer, such manifestation cannot form a contract unless the terms of the contract are reasonably certain. The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. If one or more terms of a proposed bargain are left open or uncertain, such fact reflects the lack of acceptance of any offer. Restatement Contracts 2d §§ 33, see also Davidson v. Holtzman, 47 S.W.3d 445, 453-54 (Tenn.Ct.App. 2000).

As to EPS's reliance upon the Uniform Commercial Code, EPS specifically cites the

13

following provisions:

> **Seller's remedies in general.** - - Where the buyer wrongfully . . . fails to make a payment due on or before delivery, or repudiates with respect to a part or the whole then with respect to any goods directly affected and, if the breach is of the whole contract (§ 47-2-612), then also with respect to the whole undelivered balance, the aggrieved seller may:
>
> > (e) resell and recover for nonacceptance (§ 47-2-708) or in a proper cause the price (§ 47-2-709).

Tenn. Code Ann. § 47-2-703. Under the Uniform Commercial Code "[a]ny contract for the sale of goods for the price of $500 or more must be in writing and signed by the party against whom enforcement is sought in order to be enforceable. T.C.A. § 47-2-201 (1992)" Ace Industries, Corp. V. Mastercraft Boat Co., 1995 WL 256758 at *3 (Tenn.Ct.App. May 3, 1995).

Here, consistent with the written purchase documents, PPG paid EPS for materials that EPS produced and delivered and that PPG accepted throughout 2000. EPS does not dispute PPG's statement of undisputed material facts on these facts. EPS concedes that there is not any written agreement that obligates PPG to purchase EPS's entire inventory or to pay EPS for storing inventory. Yet, whether Young's letter covers EPS's remaining inventory is unclear to the Court. With the May 16, 2001 letter, in which PPG commits to send purchase orders for EPS products and failed to do so, the Court finds that material factual disputes exist as to whether the Young letter represented another purchase order for EPS products.

14

Accordingly, the Defendant's motion for summary judgment should be granted in part and denied based on Young's May 16, 2001 letter that post-dates PPG's 2000 notice of termination.

An appropriate Order is filed herewith.

Entered this the ___9th___ day of March, 2006

WILLIAM J. HAYNES, JR.
United States District Judge